UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WILLIAM COX, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 3:12-CV-320 PS |
| MARTIN LEVENHAGEN, *et al.,* | ) |
| Defendants. | ) |

OPINION AND ORDER

William Cox, a *pro se* prisoner, filed an amended complaint under 42 U.S.C. § 1983. (DE 11.) Pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard under Section 1915A as when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. In deciding whether the complaint states a claim, I must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Cox claims that he received inadequate medical care at Westville Correctional Facility ("Westville"). The events underlying the lawsuit began in September 2011, when Nurse

Brubaker, a nurse practitioner at Westville, prescribed Cox a medication called Pamelor for pain related to a prior knee injury. At this time he was already taking another medication, Ranitidine, for a stomach disorder. He claims that Nurse Brubaker did not appropriately advise him about the side effects of Pamelor, which he later learned is a drug used to treat psychiatric disorders. He claims that she also failed to take any steps to monitor him while he was taking the drug, despite the serious risk of side effects.

In early October 2011, Cox saw Nurse P. Rogers related to his knee pain, and he alleges that she also failed to adequately advise him of the effects of Pamelor. Later in October 2011, Cox was seen by Dr. Liaw, a physician at Westville, and he told the doctor that Pamelor was not alleviating his pain. He also told Dr. Liaw the Pamelor was causing unpleasant side effects, including swelling in his mouth and bleeding gums. He asked to be taken off the drug, but instead Dr. Liaw increased the dosage "by 150%." (DE 11 at 4.)

Cox continued to suffer side effects from the medication, and in early February 2012, he submitted a health care request stating that he could not continue taking Pamelor. By this time the swelling in his mouth had become so severe that he could "hardly swallow," and his gums were so inflamed that "the puss from the infection could be sucked from between his teeth." (*Id.*) Approximately a week later he experienced a "very bizarre and total[l]y horrific dream" in which he died, an incident he also attributes to the Pamelor. He submitted another written request for health care to prison medical staff. He also spoke with his wife about what occurred, and she in turn contacted the Food and Drug Administration ("FDA"). According to Cox, his wife was allegedly told by the FDA that Pamelor was not approved for pain management and that Cox should not be taking it for that purpose. Cox's wife was also allegedly told that Pamelor and

2

Ranitidine should not be taken together, as it would increase the effects of both medications. Cox was eventually seen by medical staff on March 17, 2012, in response to his written requests. He does not detail exactly what occurred, but it can be plausibly inferred from the complaint that he is no longer taking Pamelor.

Sometime between March 2012 and the filing of the complaint in June 2012, Cox was seen at Westville by Dr. Krembs, an orthopedic specialist, regarding his ongoing knee pain. Dr. Krembs wanted to try steroid injections, and Cox requested to speak with his wife before consenting to this treatment. Cox later decided he did not want the injections, but when he spoke with Dr. Krembs again he was told "there would be no examination and absolutely no further treatment offered without the injection Plaintiff refused." (DE 11 at 6.) Cox claims that he is still suffering knee pain but has not received any additional treatment. He also claims that his request for a bottom bunk pass has been ignored by medical staff. (*Id.*)

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Here, Cox alleges that he has a knee injury which has caused him pain for nearly a year and which necessitated the use of prescription medication. Giving him the inferences to which he is entitled at this stage, he has alleged a serious medical need.

3

On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Although the Eighth Amendment does not entitle an inmate to a specific form of treatment, prison medical staff cannot simply continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

As recounted above, Cox claims that Nurse Brubaker prescribed him a medication which was not FDA-approved for the use she intended, and was contraindicated with his other medication. He claims she did not warn him about the severe side effects he later experienced and failed to take appropriate steps to monitor him during his use of the medication. He alleges that the drug did not alleviate his knee pain and caused him significant side effects over the course of several months. Giving Cox the inferences to which he is entitled at this stage, he has alleged a plausible deliberate indifference claim against Nurse Brubaker.

4

As to Nurse Rogers, Cox alleges only that he saw her once in connection with his knee pain, and she did not advise him about the side effects of Pamelor. He does not allege, however, that she had any involvement in the treatment decision made by Nurse Brubaker or that she was even aware of what medications he was taking. Nor does he allege that he told Nurse Rogers about the side effects he was experiencing, or that she otherwise had knowledge he was at serious risk of being harmed and did nothing to prevent that harm from occurring. At most, he alleges that Nurse Rogers was negligent in failing to ascertain what medications he was taking and discussing the potential side effects of those medications with him. However, negligent conduct does not give rise to an Eighth Amendment claim. *See Jackson*, 541 F.3d at 978-98; *Greeno*, 414 F.3d at 653. Accordingly, Nurse Rogers will be dismissed as a defendant.

As to Dr. Liaw, Cox claims he told the doctor that after approximately a month of taking Pamelor it was not working on his pain and was causing significant side effects. Dr. Liaw's response was to increase the dosage of the medication. Cox alleges that his side effects worsened after the dosage was increased, even though he continued to suffer knee pain. The complaint can be read to allege that Dr. Liaw did not take adequate steps to monitor Cox during his use of the drug after increasing the dosage, even though Cox reported experiencing side effects at the lower dose. After seeing Dr. Liaw, Cox claims he was not seen again by medical staff for nearly five months, and only then after he made two written requests. Giving Cox the inferences to which he is entitled at this stage, he has alleged a plausible deliberate indifference claim against Dr. Liaw.

As to Dr. Krembs, Cox alleges that the doctor briefly evaluated his knee problem and recommended steroid injections. Cox deemed this an unacceptable response, but an inmate is not entitled to demand specific care, nor does a mere disagreement with medical staff about the

5

appropriate course of treatment establish an Eighth Amendment claim. *See Greeno*, 414 F.3d at 653. However, Cox also alleges that after his initial evaluation, Dr. Krembs refused to treat him or even complete his examination, apparently because Cox had expressed disagreement with the doctor's treatment recommendation. Cox further alleges that he is still experiencing knee pain but has not received any other treatment. He has stated enough to proceed on a claim against Dr. Krembs.

In addition to the medical staff involved in his care, Cox also sues Martin Levenhagen, the superintendent at Westville, alleging that he failed to adequately "monitor" the medical staff who provided his care. (DE 11 at 10.) However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Levenhagen cannot be held liable simply because he oversees operations at the prison. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Cox has not alleged, nor can it be plausibly inferred from the complaint, that Levenhagen had any personal involvement in these events or that he otherwise had knowledge that Cox's medical needs were not being met. As a non-medical staff member, Levenhagen was entitled to delegate Cox's medical care to medical staff at the prison. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care."). Accordingly, Levenhagen will be dismissed as a defendant.

Cox also sues Corizon Healthcare Inc. ("Corizon"), the private company that employs the medical staff at Westville. As a general matter a private company may be held liable for constitutional violations when it performs a state function, *see West v. Atkins*, 487 U.S. 42 (1988), but as stated above there is no general supervisory liability under 42 U.S.C. § 1983.

6

*Chavez*, 251 F.3d at 651. Thus, Corizon cannot be held liable simply because it employs the medical staff who provided care to Cox. A private company performing a state function can also be held liable to the same extent as a state actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at prison). However, Cox does not include any allegations from which it can be plausibly inferred that Corizon had an unconstitutional practice or policy that caused his injury. Instead, the gist of Cox's claim is that in the course of his treatment medical staff violated several internal rules mandating proper care to inmates. (*See* DE 11 at 3-4, 8, 10.) For these reasons, Corizon will be dismissed as a defendant.

Finally, Cox sues the Indiana Department of Correction ("DOC") seeking $5 million in damages. (DE 11 at 10.) However, the Eleventh Amendment precludes a suit for damages against a state and its agencies. *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987). To the extent Cox is attempting to raise a claim for injunctive relief against the DOC which would not be barred by the Eleventh Amendment, such a claim cannot proceed in any event because a state agency is not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. *See Ill. Duneland Preserv. Soc'y v. Ill. Dep't of Natural Res.*, 584 F.3d 719, 721 (7th Cir. 2009). Accordingly, the DOC will be dismissed as a defendant. Cox is being permitted to proceed against three individual medical defendants, and he can seek injunctive relief related to his current medical care in connection with those claims.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against Nurse Brubaker, Dr. Liaw, and Dr. Krembs for injunctive relief and compensatory damages for failing to provide him with adequate care for a knee injury in violation of the Eighth Amendment;

(2) **DISMISSES** Martin Levenhagen, Nurse P. Rogers, Corizon Healthcare Inc., and the Indiana Department of Correction;

(3) **DISMISSES** any and all other claims contained in the complaint;

(4) **DIRECTS**, pursuant to 28 U.S.C. § 1915(d), the U.S. Marshals Service to effect service of process on Nurse Brubaker, Dr. Liaw, and Dr. Krembs; and

(5) **ORDERS** Nurse Brubaker, Dr. Liaw, and Dr. Krembs to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE and N.D. IND. L.R. 10.1, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: August 20, 2012.

                                                 /s/ Philip P. Simon
                                               Philip P. Simon, Chief Judge
                                               United States District Court